No._____14-2945_____

*In the*

# United States Court of Appeals

*for the*

# Second Circuit

H.M.G. and H.L.G.,

KELLY RUTHERFORD,

*Petitioners-Appellants,*

v.

JEH JOHNSON, Secretary, U.S. Department of Homeland Security, in his official capacity, as well as his successors and assigns, and ERIC HOLDER, Attorney General of the United States, in his official capacity, as well as his successors and assigns, U.S. Department of Justice, and LEON RODRIGUEZ, Director, U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, in his official capacity, as well as his successors and assigns, and PHYLLIS COVEN, New York City District Director, New York City Field Office, U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, in her official capacity, as well as her successors and assigns,

*Respondents-Appellees.*

## BRIEF OF PETITIONERS-APPELLANTS

### Appeal from the
### United States District Court for the
### Southern District of New York

Wendy Murphy
WOMEN'S AND CHILDREN'S ADVCACY PROJECT
New England Law | Boston
154 Stuart Street
Boston, Massachusetts 02116
(617) 422-7410
*Of Counsel*

James R. Marsh
MARSH LAW FIRM PLLC
151 East Post Road, Suite 102
White Plains, New York 10601
(212) 372-3030

*Attorney of Record*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ iii

    Cases ........................................................................................................ iii

    Statutes ....................................................................................................v

STATEMENT OF JURISDICTION ............................................................1

STANDARD OF REVIEW ...........................................................................1

ISSUES FOR REVIEW ................................................................................1

   I.  WAS IT ERROR TO DENY APPELLANTS' REQUEST FOR
       PRELIMINARY INJUNCTION .......................................................1

  II.  WAS IT ERROR TO DENY FEDERAL SUBJECT MATTER
       JURISDICTION ...............................................................................1

Statement in Compliance with Local Rule 28.1(b) .....................................1

    1.  Describe The Nature Of The Case And The Relevant Procedural History
        .....................................................................................................1

    2.  Identify The Judge Or Agency Official Who Rendered The Decision
        Being Appealed From ................................................................. 2

    3.  Indicate The Disposition Below ................................................. 2

    4.  Cite The Decision Or Supporting Opinion, If Reported ...........3

STATEMENT OF THE CASE .....................................................................3

SUMMARY OF ARGUMENT .....................................................................7

ARGUMENT................................................................................................ 8

   I.  IT WAS ERROR TO DENY APPELLANTS' REQUEST FOR
       PRELIMINARY INJUNCTION ................................................... 8

    A.  A State Court Order Requiring American Citizen Children To Reside In
        A Foreign Country Is Sufficient Proof Of Irreparable Harm To Merit A
        Preliminary Injunction ............................................................... 9

    B.  The Evidence Was Sufficient To Establish A Likelihood Of Success On
        The Merits Where A California Court Acted Without Authority In
        Ordering American Children To Reside In A Foreign Country And
        Where The Unprecedented Issues Raise Sufficiently Serious Questions
        To Make Them Fair Grounds For Litigation .........................................12

i

II. IT WAS ERROR TO DENY FEDERAL SUBJECT MATTER
JURISDICTION ........................................................................ 17

  A. Mandamus Relief Is Proper.................................................. 17

  B. Appellants Have Identified Issues That Are Substantial And
     Nonfrivolous...................................................................... 23

CONCLUSION................................................................................ 24

CERTIFICATE OF COMPLIANCE WITH Rule 32(a) ...................... 25

CERTIFICATE OF SERVICE.......................................................... 26

# TABLE OF AUTHORITIES

## Cases

*Acosta v. Gaffney*, 558 F.2d 1153 (3d Cir. 1977) .................................... 8, 9, 18, 19, 20

*Acosta v. Gaffney*, 413 F.Supp 827 (D.N.J. 1976).......................................... 8, 19, 20

*Afroyim v. Rusk*, 387 U.S. 253 (1967) ...........................................................7, 9, 17

*Anderson v. Bowen*, 881 F.2d 1 (2d Cir.1989)........................................................ 14

*Arizona v. United States*, 132 S.Ct. 2492 (2012) .................................................. 8, 11

*Armstrong v. Manzo*, 380 U.S. 545 (1965) ............................................................. 10

*Batista v. Ashcroft*, 270 F.3d 8 (1st Cir. 2001) ........................................................8

*Berner v. Delahanty*, 129 F.3d 20 (1st Cir. 1997)................................................... 14

*Board of Education v. Barnette*, 319 U.S. 624 (1943) ............................................. 14

*Chae Chan Ping v. United States*, 130 U.S. 581 (1889) ........................................... 10

*Close v. New York*, 125 F.3d 31 (2d Cir. 1997) .........................................................1

*D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983) ......................................... 13

*DeShaney v. Winnebago County Dept. of Soc. Services*, 489 U.S. 189 (1989)............. 21

*Disability Advocates, Inc. v. Paterson*, 03-CV-3209, 2010 WL 933750 pp. 3-4 (E.D.N.Y. Mar. 11, 2010) ........................................................................................ 17

*Domine v. Kumar*, 872 F. Supp. 2d 237 (E.D.N.Y. 2012) ....................................... 13

*Edwards v. California,* 314 U.S. 160, 186 (1941) .................................................... 21

*Ex parte Young*, 209 U.S. 123 (1908)............................................................... 11, 15

*Elrod v. Burns,* 427 U.S. 347 (1976) ................................................................... 8, 10

*Fenner v. Boykin*, 271 U.S. 240 (1926)................................................................... 15

*Fong Yue Ting v. United States*, 149 U.S. 698 (1893) .............................................. 10

*Harris v. McRae*, 448 U.S. 297 (1980) ...................................................................... 21

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70 (2d Cir. 1979) ............. 10

*Johnson v. De Grandy*, 512 U.S. 997 (1994) ........................................................... 13

*Juidice v. Vail*, 430 U.S. 327 (1977) ............................................................. 8, 15, 21

*Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224 (2d Cir. 1992) ................................................................................... 8

*Lowrance v. Achtyl*, 20 F.3d 529 (2d Cir.1994) ....................................................... 11

*Lozano v. City of Hazelton*, 620 F.3d 170, 204-206 (3rd Cir. 2008), vacated, 131 S.Ct. 2958 (2011) ....................................................................................................... 11

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000) .......................................... 1

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ............................................................. 13

*Mayer v. Wing*, 922 F. Supp. 902 (S.D.N.Y. 1996) ................................................ 12

*McArthur v. Bell*, 788 F. Supp. 706 (E.D.N.Y. 1992) ............................................. 21

*Mitchum v. Foster*, 407 U.S. 225 (1972) ................................................................. 12

*Moore v. City of Ashville, N.C.*, 396 F.3d 385 (4th Cir. 2005) ................................ 15

*M.R. v. Dreyfus*, 663 F.3d 1100 (9th Cir. 2011) ...................................................... 17

*New York Times Co. v. Sullivan*, 376 U.S. 254(1964) ............................................. 14

*Perez v. United States*, 502 F.Supp. 2d 301 (N.D.N.Y. 2006) ........................... 16, 23

*Pollnow v. Glennon*, 757 F.2d 496 (2d Cir. 1985) ................................................... 12

*Rent Stabilization Ass'n of City of New York v. Dinkins*, 5 F.3d 591 (2d Cir. 1993) .... 1

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) ................................................... 13

*Shelley v. Kraemer*, 334 U.S. 1 (1948) .................................................................... 14

*Small v. Reno*, 127 F. Supp. 2d 305 (D. Conn. 2000) ............................................. 12

*Smith v. Illinois Bell Telephone Co.*, 270 U.S. 587 (1926) .......................................... 14

*Vance v. Terrazas*, 444 U.S. 252 (1980) ................................................................. 10

*Wake v. United States*, 89 F.3d 53 (2d Cir. 1996) ..................................................... 1

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008) ....................... 9

*Younger v. Harris*, 401 U.S. 37 (1971) ............................................................. 14, 15

## STATUTES

8 U.S.C. § 1227(f) ................................................................................................ 16

28 U.S.C. § 1291 ................................................................................................... 1

United States Constitution Amendment I ............................................................. 10

United States Constitution Amendment XIV, § 1-Citizens .................... 9, 17, 18, 21

## RULES

Federal Rules of Civil Procedure Rule 44 ............................................................ 22

## STATEMENT OF JURISDICTION

Jurisdiction of this Court is invoked under 28 U.S.C. § 1291.

## STANDARD OF REVIEW

Factual findings are reviewed for clear error and legal conclusions are reviewed *de novo*. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) *citing Close v. New York*, 125 F.3d 31, 35 (2d Cir. 1997); *see also Wake v. United States*, 89 F.3d 53, 57 (2d Cir. 1996), *Rent Stabilization Ass'n of City of New York v. Dinkins*, 5 F.3d 591, 594 (2d Cir. 1993).

## ISSUES FOR REVIEW

I.     **WAS IT ERROR TO DENY APPELLANTS' REQUEST FOR PRELIMINARY INJUNCTION**

II.    **WAS IT ERROR TO DENY FEDERAL SUBJECT MATTER JURISDICTION**

### STATEMENT IN COMPLIANCE WITH LOCAL RULE 28.1(b)

1.     **Describe The Nature Of The Case And The Relevant Procedural History**

This appeal involves a challenge to an unconstitutional state court order requiring two American citizen children to leave the United States and reside in France. The order was issued in 2012 by a California family court judge and was made final in November 2013. The order allowed the children to return to the United States for visitation periods with their mother. When the children arrived in New York for a summer vacation in July 2014, a petition for a writ of mandamus

1

was prepared in which the children requested emergency relief from the United States District Court. The petition was filed on August 8, 2014, eleven days before the children were scheduled to return to France on August 19, 2014. The children's petition was filed against federal agencies responsible for the protection of citizenship rights and included a motion for a temporary restraining order and a preliminary injunction. The children's petition asked the district court to order federal authorities to assert temporary emergency custody over them for the limited purpose of protecting them from being forced to comply with the California order to leave the United States. After a hearing on August 13, 2014, the district court denied the children's request for a preliminary injunction and dismissed their mandamus petition. An emergency appeal was filed before the Second Circuit and denied on August 19, 2014. This appeal follows.

### 2. Identify The Judge Or Agency Official Who Rendered The Decision Being Appealed From

Honorable Andrew L. Carter, Jr., United States District Judge

### 3. Indicate The Disposition Below

The district court ruled that it lacked subject matter jurisdiction and dismissed the Appellant's petition in its entirety.

4.    **Cite The Decision Or Supporting Opinion, If Reported**

The district court's decision is unreported. It can be found at *HMG and HLG*, United States District Court Southern District of New York, Case 1:14-cv-06130-LTS, Document 11, Filed 08/15/14.

## STATEMENT OF THE CASE

Appellants H.M.G. and H.L.G. are the minor of children of Kelly Rutherford and Daniel Giersch. Ms. Rutherford is an American citizen who was born in the United States and has resided in the United States her entire life. H.M.G. and H.L.G. were born in the United States and resided in the United States their entire lives, under the primary care of Ms. Rutherford, until they were ordered by a California court to relocate to France and reside there with Mr. Giersch in 2012. Initially temporary, the order requiring the children to reside in France has since become permanent.[1] Although the order gives Ms. Rutherford liberal visitation, the children can only visit, not reside in, the United States.[2]

---

[1] A variety of terms can be used to describe the act of forcing an American citizen to reside in a foreign country. The California court used the euphemistic phrase "move away." Being ordered to leave the United States and reside in a foreign country under prohibitions that forbid re-entry except under state-controlled conditions and restrictions is more properly described as "deportation" or "expatriation." The differences are not critical in this case because the act of requiring the children to leave their own country is unconstitutional irrespective of the label used to describe the court's action.

[2] On October 16, 2014, Ms. Rutherford received notice that Mr. Giersch filed an action in the Principality of Monaco, without providing notice to Ms. Rutherford,

3

Mr. Giersch is a German citizen who resided in the United States during his marriage to Ms. Rutherford when the children were born. Although he and Ms. Rutherford were married at the time of the children's births, they legally separated before the youngest child was born in 2009.

On July 6, 2010, a California family court judge issued a stipulated judgment regarding financial rights and obligations. Issues regarding child custody and visitation were disputed and a trial on those matters took place on various dates from November 19, 2010 through August 28, 2012.

Mr. Giersch lived in the United States on an 0-1 visa while married to Ms. Rutherford. While divorce proceedings were pending, he traveled abroad and was denied re-entry into the United States, reportedly based on fraud in obtaining his 0-1 visa, though the California court declined to inquire into the reasons he was denied re-entry.[3] Mr. Giersch then asked the California court to issue an order

which resulted in the issuance of a court order from a Monegasques judge forbidding the children to travel with their mother to the United States for a scheduled October visit with Ms. Rutherford in New York. The children filed their mandamus action as an emergency in part because they were concerned about exactly this development.

[3] It is noteworthy that 8 U.S.C. § 1251(f) includes provisions regarding the deportation of aliens who entered by fraud or misrepresentation and provides that such deportation rules are inapplicable to aliens with immediate family members who are citizens or lawfully admitted aliens. In light of this provision, the California court's decision to forbid inquiry into the reasons why the father was denied re-

requiring the children to move to France where he was then living. Ms. Rutherford, the children's primary caregiver, wanted the children to live with her in New York. She offered to facilitate regular visits with the children's father in locations outside the United States.

On August 28, 2012, a "tentative decision" was entered in the California matter, which required the children to leave the United States and reside in France. They were allowed to return to the United States only for limited visitation periods with their mother, as prescribed by court order, and only at certain times during the year. That decision became a final order on November 25, 2013. Joint Appendix p. 31 [hereinafter "J.A."].

The final order required the children's father to take steps to obtain a new visa, at which point the children would be allowed to return to the United States. The court scheduled an "immigration review" hearing for early 2014 to determine whether the father had made "good faith efforts" to seek re-entry to the United States. The court order stated that if the father did not make "good faith" efforts, the California court would issue an order requiring the children to be returned to the United States to live with their mother. The order specifically provided as follows: "The Court accepts as truthful the testimony of [father] that he intends to

_____

entry, and later to decline to address whether he made "good faith" efforts to obtain a new visa, is troubling.

do everything he can to restore his right to reside legally in the United States." J.A. p. 9.

The California court conducted the "immigration review" hearings on February 19, 2014 and again on March 24, 2014. At the conclusion of the hearings, the court ruled that there would be no assessment of the father's efforts to re-enter the United States because Ms. Rutherford was late in complying with an order requiring her to identify an immigration expert to assist the court in assessing the father's efforts. Ms. Rutherford did, in fact, identify an immigration expert but she missed the deadline because she lacked counsel at the time and had no legal skills of her own. Ms. Rutherford's expert provided an opinion well in advance of the hearing and the delay caused no prejudice, but the court declined to consider any immigration issues, effectively reaffirming the court's purportedly conditional order requiring the children to reside in France.

On May 13, 2014, federal officials at the State Department informed Ms. Rutherford that Mr. Giersch had taken no steps to obtain a visa or otherwise regain lawful entry into the United States. J.A. p. 79.[4]

---

[4] Although Mr. Giersch's work visa was revoked, there is no evidence in the record indicating that he cannot obtain a visitor's visa so that he can enter the United States for the purpose of exercising his visitation rights.

When the children arrived in New York for a summer vacation in July 2014, a petition for writ of mandamus was filed in the District Court along with a motion for a temporary restraining order and preliminary injunction seeking emergency relief. J.A. pp. 5, 66. The petition was filed on August 8, 2014, eleven days before the children were scheduled to return to France on August 19, 2014 in preparation for the start of the French school year. The petition asked the district court to order federal authorities to assert temporary emergency custody over the children for the limited purpose of protecting them from being forced to comply with the California order and leave the United States. After a hearing on August 13, 2014, the District Court denied the children's request for a preliminary injunction and dismissed the children's petition. J.A. p. 169. An emergency appeal before the Second Circuit was filed and denied on August 19, 2014. J.A. p. 171. This appeal followed.

## <u>SUMMARY OF ARGUMENT</u>

This is a case of first impression because no state court has ever before ordered American citizen children to reside in a foreign country when a fit American citizen parent resides in the United States and is able to care for them.

The District Court erred in denying Appellants a preliminary injunction on the grounds that they failed to prove irreparable harm. The children have a fundamental right to reside in their own country, *Afroyim v. Rusk*, 387 U.S. 253, 257

(1967); *Acosta v. Gaffney*, 413 F.Supp 827 (D.N.J. 1976) *rev'd* on other grounds, 558 F.2d 1153 (3d Cir. 1977), and the loss of fundamental rights even for a brief time is irreparable. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976).

The District Court also erred in denying federal subject matter jurisdiction because the denial of citizenship rights is quintessentially a federal concern and when a state acts outside its authority and orders American citizens to leave the United States and reside in a foreign county, the federal government has the authority to act and the duty to act where, as here, the state remedies are inadequate to vindicate federal rights. *Arizona v. United States*, 132 S. Ct. 2492, 2498 (2012). *See also Batista v. Ashcroft*, 270 F.3d 8, 14 (1st Cir. 2001) (the right in question—American citizenship—is one of the most precious imaginable). *Juidice v. Vail*, 430 U.S. 327, 339 (1977)

## **ARGUMENT**

## I. **IT WAS ERROR TO DENY APPELLANTS' REQUEST FOR PRELIMINARY INJUNCTION**

The standard for issuing a temporary restraining order and a preliminary injunction are the same. *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. N.Y. Shipping Ass'n, Inc.,* 965 F.2d 1224, 1228-1229 (2d Cir. 1992). In general, the district court may grant a preliminary injunction if the moving party establishes irreparable harm and either (1) a likelihood of success on the merits, or (2)

sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party. *Id*. at 98 (internal quotation marks omitted). Finally, the court must ensure that an injunction is in the "public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

A. **A State Court Order Requiring American Citizen Children To Reside In A Foreign Country Is Sufficient Proof Of Irreparable Harm To Merit A Preliminary Injunction**

The Fourteenth Amendment to the United States Constitution provides that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside," and that "no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." *Afroyim v. Rusk*, 387 U.S. 253, 268, (1967) (a United States citizen possesses "a constitutional right to remain a citizen...unless he voluntarily relinquishes that citizenship"). Among the privileges and immunities of citizenship is the fundamental right to reside in one's own country. *Acosta v. Gaffney*, 413 F.Supp 827 (D.N.J. 1976) *rev'd* on other grounds, 558 F.2d 1153 (3d Cir. 1977). Under no circumstances can an American citizen be forced to relinquish the fundamental right to reside in the United States, whether by court order or act of Congress, because expatriation can only occur

when a citizen exercizes the voluntary decision to give up citizenship. *Vance v. Terrazas*, 444 U.S. 252 (1980) ("In the last analysis, expatriation depends on the will of the citizen rather than on the will of Congress and its assessment of his conduct").

In this case there can be no doubt that the children did not choose to live in a foreign country since they were only two and five years old when the California court forced them to live in France. Each day the children are forced to reside in a foreign country is "irreparable harm" because "a monetary award cannot be adequate" to remedy to harm. *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979). Moreover, because the California court lacked authority to order the children to reside in a foreign country, every minute that the children are residing in a foreign country under the compulsion of an unlawful order is an exacerbation of the ongoing harm. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) (the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury).

To the extent it is constitutionally possible to order an American citizen to reside in a foreign country, such matters are not within the powers of the states to decide. Immigration enforcement, like deportation, is a federal power. *See Chae Chan Ping v. United States*, 130 U.S. 581 (1889) and *Fong Yue Ting v. United States*,

149 U.S. 698 (1893). These cases make clear that states have no authority to regulate immigration and to the extent states enact laws (or judges issue orders) that affect or regulate immigration,, they are preempted by federal law. *See, e.g., Lozano v. City of Hazelton*, 620 F.3d 170, 204-206 (3rd Cir. 2008), vacated, 131 S.Ct. 2958 (2011). The Supreme Court's recent decision in *Arizona v. United States*, 132 S.Ct. 2492 (2012) reaffirms that the federal government has exclusive authority to regulate immigration.

Without relief from this Court, the children's only option for reestablishing citizenship will be for Ms. Rutherford to retain the children in the United States in violation of the California order and then have the California court hold her in contempt or impose sanctions from which she could then file an appeal. Such actions will delay the remedy, require needless litigation, and expose Ms. Rutherford to unjust and possibly criminal punishment. Neither Ms. Rutherford nor her children should suffer civil and potentially criminal penalties as a prerequisite to obtaining meaningful redress of fundamental federal rights. *See Ex parte Young*, 209 U.S. 123, 144 (1908) (federal jurisdiction proper without requiring citizens to first suffer violation of rights).

11

**B.** **The Evidence Was Sufficient To Establish A Likelihood Of Success On The Merits Where A California Court Acted Without Authority In Ordering American Children To Reside In A Foreign Country And Where The Unprecedented Issues Raise Sufficiently Serious Questions To Make Them Fair Grounds For Litigation**

    **1.** **Likelihood of Success: Due Process**

Appellants are likely to succeed on their Due Process claim because, as noted above, they were illegally ordered to reside in a foreign country by a state court that lacked authority to issue such an order. Orders issued without authority are irrational, arbitrary, and capricious. *Mayer v. Wing*, 922 F. Supp. 902, 911 (S.D.N.Y. 1996) (*quoting Pollnow v. Glennon*, 757 F.2d 456, 501(2d Cir. 1985)). ("At a minimum, due process requires that government officials refrain from acting in an irrational, arbitrary or capricious manner); *see Small v. Reno*, 127 F. Supp. 2d 305, 311 (D. Conn. 2000) (substantive due process protects individuals against government action that is arbitrary…conscience-shocking…or oppressive in a constitutional sense…"). That the California court held hearings prior to violating the children's absolute rights as citizens is of no consequence. *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir.1994) (Government action violates substantive due process "regardless of the fairness of the procedures used…" when that action interferes with rights "implicit in the concept of ordered liberty").

Even if the California court had lawful authority to order the children to live in a foreign country, the California proceedings that led to the order violated

procedural due process because the children were denied a meaningful right to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (the fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner"). Indeed, there was no hearing whatsoever on the issue of the children's personal citizenship rights, much less on the issue of California's lack of authority to deprive the children of their fundamental right to reside in their own country.

Violations of the children's due process rights cannot be remedied without redress in federal court. As noted above, the children lack standing to seek enforcement of their citizenship rights in the California family court.

### 2.    Likelihood of Success: Jurisdiction

Because the children had no opportunity to enforce their federal rights in the California proceeding, the limitations on federal jurisdiction set forth in *Rooker-Feldman* are inapt. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-416 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 483, n.16 (1983). The Rooker-Feldman doctrine precludes "a party losing in state court…from seeking what in substance would be appellate review of [a] state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005–1006 (1994).

Rooker-Feldman clearly has no application here because the children's federal claims were never presented to or decided by the state court, nor could they have been because the children lacked standing to assert their federal rights in California.

The children have standing to seek redress in this Court because they have a cognizable legal interest in the enforcement of their federal right to reside in their own country. Long settled prohibitions against government violations of civil liberties extend to court orders, whether initiated by the court itself, *Berner v. Delahanty*, 129 F.3d 20 (1st Cir. 1997) (attorney filed § 1983 action against state court criminal judge to seek his right to wear a particular pin during court proceedings), or at the behest of a private person. *Shelley v. Kraemer*, 334 U.S. 1, 14, (1948)(deeming "long [] established" the proposition that the actions of state courts and judicial officers in their official capacities constitute state action, even if issued on behalf of private persons); *see also Board of Education v. Barnette*, 319 U.S. 642 (1943); *Smith v. Illinois Bell Tel. Co.*, 270 U.S. 587 (1926); *New York Times Co. v. Sullivan*, 364 U.S. 254, 265 (1964).

The prohibitions on federal jurisdiction set forth in *Younger v. Harris*, 401 U.S. 37, 56 (1971) are also inapt because they only bar federal court intervention in state court proceedings when the action complained of constitutes an "ongoing state judicial proceeding" that "provides the federal plaintiff with an adequate

opportunity to raise the federal constitutional claims advanced in the federal lawsuit." *Moore v. City of Ashville*, 396 F.3d 385, 390 (4th Cir. 2005). *Younger* is inapt because there is no ongoing state proceeding, and even if there were, the children lack standing to assert their federal rights in state court. Thus, they will never have an adequate opportunity to be heard to enforce their federal rights in state court. In such cases, federal jurisdiction is proper because federal courts of equity may "have a duty to act" where the state remedy is "inadequate to vindicate federal rights." *Juidice v. Vail*, 430 U.S. 327, 339 (1977).

Abstention is also inappropriate where, as here, Appellants face "great" and "irreparable" harm. *Younger*, 401 U.S. at 46 (*citing Fenner v. Boykin*, 271 U.S. 240 (1926) and *Ex parte Young*, 209 U.S. 123 (1908) (recognizing an exception to the abstention doctrine in cases involving threatened "irreparable injury," therein defined as harm that which is "immediate, great, and irreparable.")

### 3. Likelihood of Success: Serious Questions Make Them Fair Grounds For Litigation

This case is unprecedented and involves a very serious issue concerning the authority of state courts to force American citizen children to reside in a foreign country even though an American citizen parent remains in the United States and is fit and available to care for the children. Such fundamental rights of citizenship should not be abridged without at least federal judicial review of the merits to

15

determine the constitutional propriety of a state's encroachment on such important federal rights. While issues involving the interests of children being required to live abroad have been litigated in immigration cases, there is no precedent addressing the unique facts here. Hence, this case clearly raises serious issues worthy of litigation since a resolution on the merits will protect the citizenship rights of the American children involved not only in this case, but will protect similarly situated American children from similar illegal state action and irreparable harm.

### 4.    Likelihood of Success: Balance of Hardships and Public Interest

Because the children's right to reside in the United States is fundamental and absolute, it cannot be compromised or "balanced" against any competing interest. Even if it were to be so balanced, however, the fact that the children are enduring ongoing and irreparable harm to their fundamental rights during each moment they are forced to live in a foreign country is a profound hardship that far outweighs any hardship the father may endure if the children resided in the United States. The father could request a visa under 8 U.S.C. § 1227 (f), and failing that, the children could live in the United States and visit their father in his country of residence. While Appellees might speculate about whether a visa would be granted to the father, it is not disputed that the father has taken no steps to obtain permission to enter the United States. In such circumstances, speculation about whether the

father's request would be denied is insufficient, especially when pitted against the certainty and severity of ongoing harm to the children.

Because a preliminary injunction is the only option that allows the children to reestablish their citizenship rights and avoid irreparable harm while the parties litigate the merits in a case where an abundance of authority favors the children's absolute right to reside in their own country, issuance of a preliminary injunction is not contrary to the public interest. *See e.g. M.R. v. Dreyfus*, 663 F.3d 1100, 1120 (9th Cir. 2011); *Disability Advocates, Inc. v. Paterson*, 03-CV-3209, 2010 WL 933750 pp. *3-4 (E.D.N.Y. Mar. 11, 2010) *rev'd on other grounds*.

## II.   IT WAS ERROR TO DENY FEDERAL SUBJECT MATTER JURISDICTION

As noted above, the right of American citizens to reside in the United States is fundamental, absolute, and protected by the Fourteenth Amendment to the United States Constitution. *Afroyim v. Rusk*, 387 U.S. at 257. Thus, the federal courts clearly have subject matter jurisdiction.

### A.   Mandamus Relief Is Proper

Mandamus relief is proper if Appellants can demonstrate (1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy

available. *Domine v. Kumar*, 872 F. Supp. 2d 237, 243 (E.D.N.Y. 2012) *citing*

*Anderson v. Bowen,* 881 F.2d 1, 5 (2d Cir.1989).

### 1.    Appellants have a Clear Right to the Relief Sought

It is indisputable that the children in this case have a clear right to reside in

their own country because the absolute right of a United States citizen to reside in

the United States is well established under the Fourteenth Amendment. The

Fourteenth Amendment's citizenship provision provides that "all persons born or

naturalized in the United States, and subject to the jurisdiction thereof, are citizens

of the United States and of the State wherein they reside," and that "no State shall

make or enforce any law which shall abridge the privileges or immunities of citizens

of the United States." Among the privileges and immunities of citizenship is the

fundamental right to reside in one's own country. *Acosta v. Gaffney*, 413 F.Supp 827

(D.N.J. 1976) *rev'd* on other grounds, 558 F.2d 1153 (3d Cir. 1977) (alien petitioners

sought review order of INS denying application for stay of deportation, District

Court held that deportation of two alien parents would be contrary to the

Fourteenth Amendment's citizenship provision as it would result in the de facto

deportation of their minor citizen child). The *Acosta* court held that "no act of any

branch of government may deny to any citizen the full scope of privileges and

immunities inherent in United States citizenship. Central to all of those rights, of

course, is the right to remain." *Acosta*, 413 F.Supp at 832. While the Third Circuit held in *Acosta* that the District Court erred in its decision to stay the deportation order as to the non-citizen parents, the court did not overturn or even criticize the existence of the fundamental right to remain doctrine. Indeed, the Third Circuit emphasized that such a right is bestowed on American citizens and is a "fundamental right." *Acosta v. Gaffney*, 558 F.2d 1153, 1157 (3d Cir. 1977).

The right to remain principle addressed in *Acosta* has been cited approvingly in this jurisdiction. *Perez v. United States*, 502 F. Supp. 2d 301 (N.D.N.Y. 2006). In *Perez*, a man with derivative citizenship who was then convicted of the crime of unlawful reentry to the United States had his conviction overturned on the grounds that a person cannot be convicted of unlawful reentry when he is a lawful citizen. The court relied on *Acosta's* "right to remain" language and emphasized that "United States citizenship entails the privilege to reenter *and remain* in the country." *Id*. at 311. Noting the fundamental nature of the interest at stake, the court held, "[t]o deny a United States citizen the privilege to reenter and remain in the United States […] would be 'repugnant to the Constitution.'" *Id. citing Acosta,* 413 F.Supp. at 832.

Although the child involved in the *Acosta* case was ultimately required to leave the United States despite her status as an American citizen, she enjoyed an

19

absolute right to *remain* in the United States and was required to leave only because she lacked the capacity to *exercise* her right because she had no guardian to care for her. *Acosta*, 558 F.2d at 1158. The court in *Acosta* noted that the result would have been different if the child's parents had placed their daughter into foster care or made other arrangements for her guardianship in the United States. Although the minor child was a citizen, she had nobody to care for her in the United States, thus was forced by necessity to live in a foreign country. Unlike here, the child in *Acosta* was not subjected to an order against her, but rather suffered the consequences of orders against her parents.

*Acosta* is inapt because the children in this case since do have a fit and available guardian in their mother, Kelly Rutherford—an American citizen living in the United States who is willing and able to care for her children while also facilitating visitation with the children's foreign father. In sum, unlike the child in *Acosta*, the children in this case have both a right to remain in the United States and the capacity to *exercise* that right.

> **2.    Appellees have a Plainly Defined and Peremptory Duty to Act**

While no case exactly on point expresses a "plainly defined and peremptory" duty on the part of Appellee agencies to take the specific steps requested here, this Court must recognize such a duty on the unique and unprecedented facts presented

lest the absolute right of citizenship in controversy be construed as a "munificent bequest in a pauper's will." *Edwards v. California*, 314 U.S. 160, 186 (1941).

Appellees' duty to act is derived from the Due Process Clause of the Fourteenth Amendment, which imposes a duty on the federal government to protect individuals from unconstitutional state action. *DeShaney v. Winnebago County Dept. of Soc. Services*, 489 U.S. 189, 196 (1989). While there is no affirmative duty to provide funds or services to citizens in the pursuit of their freedoms, the children here are not requesting services or funds, they seek only federal agency protection from an unlawful California court order because the order is preventing them from exercising their fundamental right to reside in the United States. The children's request before this Court is proper because, as noted above, federal courts have a duty to act where state court remedies are inadequate to vindicate federal rights. *Juidice v. Vail*, 430 U.S. at 339.

Appellants are mindful that matters arising out of family court proceedings are not typically resolved in federal court, *McArthur v. Bell*, 788 F. Supp. 706, 708-709 (E.D.N.Y. 1992), ("[t]o decide the instant case, this Court would be forced to re-examine and re-interpret all the evidence brought before the state court in the domestic relations proceedings…. It is not the role of this Court.") In this case, however, Appellants are not requesting that this Court "re-interpret" or "re-

examine" evidence from the California proceeding. To the contrary, the children

ask only that their fundamental right to reside in their own country be protected.

The resolution of this question *requires* federal court involvement and needs no

reassessment of the California court's evidence.

Under the existing California order, the children are forbidden to enter the

United States for more than a few months total each year. Because those

restrictions on the children's fundamental rights have been in place for more than

two years—first as a temporary order then as a final order as of November 2013—

the children have now apparently satisfied the criteria for a foreign court to

conclude that they have established residency outside the United States. The

children's father recently filed an action in Monaco—after this matter was filed in

August 2014—in which he not only established jurisdiction there, but also obtained

a court order forbidding the children from travelling to the United States for a

previously scheduled week-long visit with their mother in October.[5]

---

[5] This Court can take judicial notice of this foreign order after it is properly
authenticated under Federal Rules of Civil Procedure Rule 44. Appellants will
submit this document an addendum as soon as it is properly authenticated.

### 3.    Appellants have No Adequate Alternative Remedy

As argued above, the children have no adequate alternative remedy because there is no state court proceeding in which they can effectively assert their citizenship rights.

Mandamus relief is proper because Appellee agencies are responsible for protecting citizenship rights and are the only government entities with proper authority to take immediate action to restore the children's fundamental constitutional citizenship right to reside in their own country.

### B.    Appellants Have Identified Issues That Are Substantial And Nonfrivolous

Throughout this brief, the children have cited numerous legal authorities setting forth substantial and nonfrivolous issues regarding the absolute nature of the citizenship rights at stake and the urgent need for this Court to exercise its authority to protect the children's rights from ongoing and irreparable harm. Each and every moment that the children are forced to live in exile from their own country is a new, non-frivolous, and substantial harm that can and should be remedied by equitable redress in this Court.[6]

---

[6] For example, the district court could have issued an order instructing Appellees to revoke or seize the children's passports or to otherwise prevent them from international air travel by denying them access to international carriers as a fair and balanced temporary solution while the larger legal issues are litigated.

## CONCLUSION

For the foregoing reasons, Appellants respectfully request that this Court reverse the judgment of the District Court and issue an order granting all appropriate equitable and declaratory relief.

Respectfully submitted,

James R. Marsh
(Counsel of Record)

James R. Marsh
MARSH LAW FIRM PLLC
151 East Post Road, Suite 102
White Plains, New York 10601-5210
(212) 372-3030
jamesmarsh@marshlaw.us

Wendy Murphy
Director, Women's and Children's
Advocacy Project, Center for Law and Social
Responsibility at New England Law | Boston
154 Stuart Street
Boston, MA 02116
(617) 422-7410
wmurphy@nesl.edu
*Of Counsel*

*Attorneys for Petitioners-Appellants*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with the type-volume limitation of F.R.A.P. 32(a)(7)(B) because this brief contains 5455 words, excluding the parts of the brief exempted by FRAP 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of F.R.A.P. 32(a)(5) and the type style requirements of F.R.A.P. 32(a)(6) because this brief has been prepared in a proportionally space typeface using Microsoft Word 2010 Version 14.0.7106.5003 in 14 point Equity Text B.

Dated: October 20, 2014

_____
James R. Marsh
MARSH LAW FIRM PLLC
151 East Post Road, Suite 102
White Plains, New York 10601-5210
(212) 372-3030

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 20, 2014, the foregoing document was served on the

following parties or their counsel of record via the CM/ECF filing system:

Jacob Max Bergman, Esq.
United States Attorney's Office
for the Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007

Benjamin H. Torrance
Assistant U.S. Attorney
United States Attorney's Office
for the Southern District of New York
86 Chambers Street
New York, New York 10007

_____

James R. Marsh